UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONSUMER HEALTH INFORMATION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>AMYLIN PHARMACEUTICALS, INC.,<br>AMYLIN PHARMACEUTICALS, L.L.C.,<br>ELI LILLY & CO.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:13-cv-01061-TWP-DML<br>)<br>)<br>)<br>)<br>)<br>) |

**ENTRY ON MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss filed by Defendants Amylin Pharmaceuticals, Inc., Amylin Pharmaceuticals, L.L.C., (collectively, "Amylin") and Eli Lilly & Co. ("Lilly") (collectively, "Defendants") ([Filing No. 23](#)), as well as a Supplemental Motion to Dismiss filed by the Defendants ([Filing No. 45](#)). Plaintiff Consumer Health Information Corporation ("CHIC") filed this copyright infringement action under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ("Copyright Act") against Defendants, alleging that Defendants infringed on copyrights on patient education materials developed by CHIC. For the reasons set forth below, Defendants' Motion to Dismiss and the Supplemental Motion to Dismiss are **GRANTED**.

## I. BACKGROUND

The following facts are taken from CHIC's Complaint and are accepted as true for purposes of this motion to dismiss. CHIC is a corporation incorporated under the laws of the District of Columbia with its principal place of business in the State of Virginia. Amylin Pharmaceuticals, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business in the State of California. Amylin Pharmaceuticals, L.L.C. is a limited liability

company formed under the laws of the State of California with its principal place of business in the State of California. Lilly is a corporation incorporated under the laws of the State of Indiana with its principal place of business in the State of Indiana. Amylin and Lilly are companies primarily engaged in the research, development, manufacture, marketing, and sale of pharmaceuticals and medical devices. CHIC has expertise in patient engagement and patient adherence strategies, health literacy, and patient education program development for prescription drugs, over-the-counter products and medical devices.

In 2005, Defendants introduced the pharmaceutical drug BYETTA to the marketplace. BYETTA is an injectable prescription medicine used to treat adults with type 2 diabetes mellitus. Defendants worked together to research, develop, manufacture, market and sell BYETTA as part of a mutual alliance referred to as the Amylin-and-Lilly Alliance. After the launch of BYETTA, Defendants experienced unexpectedly poor sales and extremely high call center costs. The poor sales were the result of poor patient adherence and compliance. Patients had a difficult time understanding the materials that came with their medication and thus had difficulty administering the drug properly. As a result, many patients stopped taking BYETTA, and subsequently stopped re-filling their prescriptions. In addition, the materials provided to physicians and other healthcare professionals did not adequately train these persons on how to demonstrate the proper use of BYETTA to their patients. As a result, physicians did not prescribe BYETTA as frequently as expected. Both of these factors contributed to poor sales.

In November 2005, Defendants contacted CHIC to develop a strategy to improve sales of BYETTA by improving patients' understanding of how to use the medication. In December 2005, Defendants requested CHIC to develop a patient-compliance strategy that would increase patient adherence. From December 2005 to February 2006, CHIC provided consulting services and

proposals for development of a patient compliance strategy. During the course of this work, Defendants requested a high number of revisions to CHIC's proposals for which CHIC was never paid. Defendants reassured CHIC that payment for its prior work would be forthcoming. In February 2006, Defendants decided to change the scope of the work and requested a proposal from CHIC for the development of new patient education materials for BYETTA. In March 2006, CHIC and the Defendants entered into a Master Service Agreement ("the Agreement") for the development of patient education materials. CHIC signed the Agreement because Defendants refused payment for past work unless and until the Agreement was executed, and also because CHIC was in poor financial condition and wished to preserve its reputation in the pharmaceutical industry marketplace.

Under the Agreement, CHIC was retained to provide patient education services to Defendants, including the development and revision of BYETTA patient education materials. Section 4(a) of the Agreement purports to designate CHIC's creation of the patient education materials as works made for hire under 17 U.S.C. § 201, and CHIC purported to assign its interest in the copyrighted materials to Amylin. Defendants have been copying and using these materials for the past seven years. CHIC claims that not all of the copyrighted materials at issue were assigned to Amylin under the terms of the Agreement or, alternatively, that CHIC may avoid enforcement of the Agreement assignment provisions under the California economic duress doctrine.

In December 2008, CHIC filed a prior civil action against the Defendants and the action was voluntarily dismissed, without CHIC's consent, on July 20, 2009. ([Filing No. 38-1](Filing No. 38-1)). Additional facts will be addressed below as necessary.

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court examines the sufficiency of the complaint, not the merits of the lawsuit. *United States v. Clark Cnty., Ind.*, 113 F. Supp. 2d 1286, 1290 (S.D. Ind. 2000). The court will dismiss a complaint for failure to state a claim if it "'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When reviewing a 12(b)(6) motion, the court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III. DISCUSSION

CHIC brings this action for copyright infringement based upon Defendants' use of the BYETTA patient education materials, alleging that CHIC is the owner of the copyrights and that Defendants were not authorized to use, copy, or publish CHIC's works. Further, they argue that the Agreement is ineffectual because it was procured in violation of the California state-law[1]

---

[1] The choice of law provision in the Master Service Agreement provides that California is the applicable law, and neither party disputes that California substantive law applies. ([Filing No. 24-2, at ECF p. 8](#)).

"economic duress" doctrine, and because the Agreement was procured through fraud and deceit. Defendants argue that the applicable California four-year statute of limitations bars rescission of the contract, and the Copyright Act's three-year statute of limitations bars CHIC's copyright infringement claim.

A.   **Contract Rescission**

Defendants argue that CHIC's claim that the Agreement is unenforceable is barred by California's four-year statute of limitations for rescission of a contract. In contrast, CHIC argues that avoidance of a contract due to fraud or economic duress is not subject to the California statute of limitations applicable to a rescissionary action when used as a defense to the enforceability of a contract, the assignment provisions of the Agreement.

Under California law, a party may avoid enforcement of a contract under the doctrine of economic duress. "Economic duress does not require an unlawful act, but may come into play upon the doing of a wrongful act which is sufficiently coercive 'to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'" *Synnex Corp. v. Wattles*, No. 11-CV-01496-YGR, 2012 WL 5524953, at * 4 (N.D. Cal. Nov. 14, 2012) (quoting *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158 (Cal. Ct. App. 1984)). Acts that may constitute a wrongful act for purposes of the economic duress doctrine include assertion of a claim known to be false, or a bad faith threat to breach a contract or to withhold a payment. *Rich & Whillock, Inc.*, 157 Cal. App. 3d at 1159. A reasonably prudent person subject to such a wrongful act must have no reasonable alternative but to enter into the contract when the only other alternative is financial ruin in order to rescind a contract under this doctrine. *Id.* However, "[h]ard bargaining, 'efficient' breaches and reasonable settlements of good faith disputes are all acceptable, even desirable, in our economic system" and will not form the

5

basis of an economic duress claim. *Id.* Applying these principles, a party claiming economic duress "can effect a rescission only by promptly notifying the other party of an intent to rescind the agreement and restoring the consideration received." *Hotel Employees & Rest. Employees Union, Local 2, AFL-CIO v. Marriott Corp.*, No. C-89-2707 MHP, 1993 WL 341286, at *9 (N.D. Cal. Aug. 23, 1993) (citing Cal. Civ. Code § 1691).

California law also provides for a four-year statute of limitations for rescission of a contract based on inducement by fraud or deceit. Cal. Civ. Proc. Code § 337. "The time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred. Where the ground for rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.* This statute of limitations does not apply to defenses; specifically, "the *defendant* may allege and prove fraud as a *defense*" to the enforcement of a contract procured by fraud or duress. *Styne v. Stevens*, 26 P.3d 343, 350 (Cal. 2001) (emphasis added). Under California law, "[o]ne sued on a contract may urge defenses that render the contract unenforceable, even if the same matters, alleged as grounds for restitution after rescission, would be untimely." *Id.* This rule is not just applicable to allegations of fraud, but "*any* grounds for asserting the illegality of the contract upon which the plaintiff sues." *Id.* (emphasis added).

CHIC is not using rescission as a defense; thus, the statute of limitations for rescission actions does apply. Indeed, this is not a case where Defendants have sued CHIC over the contract and CHIC is now seeking to avoid it as a defense, which are the circumstances under which the statute of limitations would not apply. Rather, CHIC is using rescission on the basis of fraud or economic duress an offensive measure to invalidate and render unenforceable the intellectual property provisions of the Agreement upon which it is now suing Defendants to recover damages.

6

"Statutes of limitations bar 'actions or proceedings' . . . thus guarding against stale claims and affording repose against long-delayed litigation. They act as shields, not swords." *Id.* CHIC is attempting to use rescission as a "sword" to recover from Defendants amounts that it believes it is owed for use of the copyrighted materials at issue by asserting that the intellectual property transfer provisions were not effective to transfer the copyrights at issue to Amylin. This is not a defense; it is simply an alternatively worded action for rescission. CHIC is not responding to a claim by Defendants, which would render the defense exception to the statute of limitations inapplicable. *See, cf. Pringle v. Water Quality Ins. Syndicate*, 646 F. Supp. 2d 1161, 1171 (C.D. Cal. 2009) ("If the result the defendant seeks is simply that he or she owes no obligations under an agreement alleged by the plaintiff, the matter must be deemed a defense to which the statute of limitations does not apply." (quoting *Styne*, 26 P.3d at 351)). CHIC's argument that avoidance of the contract is being asserted as a defense is unavailing, as CHIC is not simply seeking a determination that they have no obligations under the contract, rather, they are affirmatively seeking relief on the basis of this argument.

Assuming, as the Court must for purposes of this motion, that CHIC did enter into the Agreement on the basis of fraud or economic duress, these facts would have been known to CHIC at the time it entered into the contract in March 2006 or, at the latest, October 2006 when it believed Defendants fraudulently entered into the Agreement without any intention of fulfilling its terms. Because the statute of limitations begins to run when a party learns of the facts that entitle the aggrieved party to rescind the contract, Cal. Code Civ. P. § 337, CHIC's claim is well past the statute of limitations for a rescission action. The Court concludes that CHIC's claim that the Agreement is invalid as a means of asserting its intellectual property rights is barred by California's four year statute of limitations.

**B.     Copyright Act**

In their supplemental motion to dismiss, Defendants argue that CHIC's copyright claim is barred by the three year statute of limitations for infringement actions because the disputed issue in this case is ownership, not copying or use. CHIC argues that the continuing infringement doctrine set forth in *Taylor v. Meirich*, 712 F.2d 1112 (7th Cir. 1983), renders their claim timely.

"Copyright infringement claims have two basic elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 36 (1991)). The Copyright Act provides that all civil actions must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). "For ordinary claims of copyright infringement, each new infringing act causes a new claim to accrue," whereas "'claims of co-ownership, as distinct from claims of infringement,' accrue only once, 'when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation.'" *Seven Arts*, 733 F.3d at 1254 (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)). CHIC claims that it is the owner of the copyrights at issue, while Defendants claim that Amylin is the owner under the terms of the Agreement, and therefore cannot be held liable for infringement. There is no question that Defendants have copied and used the materials, as asserted by CHIC in its Complaint. However, the Court agrees with Defendants that this case turns on ownership, not use, and therefore has an impact upon when the claim accrued for purposes of the statute of limitations.

The Defendants cite to the Ninth Circuit decision in *Seven Arts* in support of their argument that the statute of limitations bars CHIC's infringement claim. In that case, Seven Arts brought claims for copyright infringement, a declaration of ownership rights, and an accounting against

8

Paramount Pictures, alleging that Paramount paid royalties to another company, Content Media, which claimed to be the copyright owner of three films. Seven Arts claimed it was the registered owner or assignee of the registered owner of the films. The court found that Seven Arts' infringement claim was barred by the statute of limitations, holding that "an untimely ownership claim will bar a claim for copyright infringement where the gravamen of the dispute is ownership, at least where . . . the parties are in a close relationship." *Seven Arts*, 733 F.3d at 1258. The court distinguished the case from one for "ordinary infringement" where ownership is not in dispute and the case centers on the copying/use element of a copyright infringement claim. *Id.* at 1254. The Ninth Circuit opted to follow the lead of the Second and Sixth Circuits, which held that "where the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred." *Id.* at 1255 (citing *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389–90 (6th Cir. 2007); *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005)). The rationale for this distinction, as stated by the court, is that "allowing infringement claims to establish ownership where a freestanding ownership claim would be time-barred would permit plaintiffs to skirt the statute of limitations for ownership claims and lead to results that are 'potentially bizarre.'" *Seven Arts*, 733 F.3d at 1255 (citing 3 Nimmer & Nimmer, *Nimmer on Copyright*, § 12.05[C][3]). The court found that Seven Arts' infringement claim accrued upon Paramount's express repudiation of Seven Arts' copyright ownership, which was more than three years prior to the lawsuit. *Id.* at 1257.

CHIC attempts to discredit the validity of the *Seven Arts* decision, arguing that it is in conflict with the Seventh Circuit's decision in *Taylor* and conflicts with, but does not overrule, a prior Ninth Circuit decision applying the continuing infringement doctrine. *See Kling v. Hallmark*

9

*Cards, Inc.*, 225 F.3d 1030 (9th Cir. 2000). However, *Taylor* involved what the Ninth Circuit characterized as an "ordinary infringement case" where ownership was not disputed, and is thus distinguishable from *Seven Arts* and the present case. *Seven Arts* is also distinguishable from the *Kling* case, as *Kling* rejected the argument that a non-obvious copyright owner must sue for a declaration of ownership earlier, "absent any infringing conduct." *Kling*, 225 F.3d at 1037. *Seven Arts*, as well as this case, involves ongoing acts of alleged infringements, not speculative infringement. Thus, there is no conflict between either *Taylor* or *Kling* with the Ninth Circuit's decision in *Seven Arts*.

The instant case presents a very similar situation to *Seven Arts*, as the validity of CHIC's claim turns on which party is the owner of the copyrighted materials. It is ownership, not use, which is the dispositive issue in this case; CHIC acknowledged in its Complaint that Defendants have been using the copyrighted materials for the past seven years. As such, the statute of limitations with respect to ownership actions controls in this case. *See Kwan,* 634 F.3d at 230 ("Where . . . the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail."). The rationale quoted in *Seven Arts* is particularly applicable here, which states:

> It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort.

*Id.* (quoting *Zuill*, 80 F.3d at 1369). That is the exact situation that Defendants are potentially facing here; CHIC waited seven years to bring this infringement claim, now asserting that they, and not Defendants, are the rightful owners of the copyrighted materials. In the meantime, CHIC alleges that Defendants "have earned gross profits in excess of several billions of dollars from the

use, copying, and publication of CHIC's works." Filing No. 1, at ECF p. 8. CHIC is now seeking to "pounce on the prize" seven years later.[2]

The Court must now determine whether CHIC has "pleaded itself out of court" by alleging facts showing that Amylin repudiated CHIC's ownership of the copyrighted materials more than three years before filing this claim. Paragraph 22 of CHIC's Complaint states, "In Section 4(a) of the Agreement, the parties purported to designate CHIC's creation of the patient education materials as works made for hire under 17 U.S.C. §101 [sic] and, in turn, CHIC purported to assign its interests in the work-for-hire copyrights to Defendants." Filing No. 1, at ECF p. 6. In addition, the Agreement explicitly states that "[a]ll materials" and "[a]ll writings" "prepared under the Master Service Agreement" would be "the sole and exclusive property of AMYLIN. . . ."[3] Filing No. 24-2, at ECF p. 4. While CHIC now attempts to carve out some of the copyrighted works at issue under the argument that they do not fit the definition of "work-for-hire," the Agreement clearly states that all materials created under the Agreement are property of Amylin. The Agreement also contains an express assignment provision, explicitly assigning "all other rights which are incident to copyright ownership" to Amylin. Filing No. 24-2, at ECF p. 4. Thus, CHIC was on notice back in 2006 that Amylin claimed an ownership interest in the copyrighted materials by the terms of the Agreement, and any challenge to their ownership was required to be brought within three years of the date of the Agreement.

---

[2] Neither party briefed the issue of whether CHIC and Amylin were in a "close relationship" such that the rule in *Seven Arts* would apply. *See* Filing No. 47, at ECF p. 8 n.4. The Court finds that the relationship between CHIC and Amylin fits the definition of "close relationship" which includes "those who transfer copyright ownership via contract." *Seven Arts*, 773 F.3d at 1256.

[3] The Court may properly consider the Master Service Agreement on a 12(b)(6) motion to dismiss. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

CHIC's position in its Complaint—that some materials were not transferred under the Agreement because they were not works made for hire— is inconsistent with the plain language of the Agreement, and the Copyright Act itself. Under the "works made for hire" provision of the Copyright Act, the employer or other person for whom the work was prepared is automatically considered the author and owns all of the rights in the copyright, thus there would be nothing for CHIC to transfer. 17 U.S.C. § 201(b). The Agreement expressly includes language assigning any rights that CHIC did have in all of the materials to Amylin, which would cover any other copyright ownership rights that did not automatically vest with Amylin. Even if the Court accepts CHIC's claim that some of the materials do not fit within the statutory definition of "works made for hire," the assignment language in the Agreement serves as a "catch all" provision, which specifically assigns "all other rights incident to ownership" to Amylin. [Filing No. 24-2, at ECF p. 4](). CHIC cannot now reinterpret the plain language of the contract, effectively rendering the assignment provisions meaningless, in an attempt to get around the statute of limitations. The Court finds that the language in the Agreement is not ambiguous, and the plain language of the agreement conflicts with CHIC's current interpretation. *See* Cal. Civ. Code, § 1639 ("[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . ."); *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1134 (Cal. Ct. App. 2008), *as modified on denial of reh'g* (June 4, 2008) ("Absent a conflict in the evidence, the interpretation of the contract remains a matter of law."); *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (Cal. Ct. App. 2011) ("To the extent practicable, the meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless.").

With respect to CHIC's argument that the statute of limitations on its infringement claim should be equitably tolled, the Court finds this argument unavailing. The equitable tolling doctrine serves as a safeguard that revives otherwise-prescribed claims "where the plaintiff in some extraordinary way has been prevented from asserting his or her rights." *Squirrel Hill*, 413 F. Supp. 2d at 521 (citing to *Podobnik*, 409 F.3d at 591). CHIC argues that it was prevented from asserting and enforcing its substantive federal rights through the "extraordinary" acts and omissions of its *own* former counsel. ([Filing No. 47, at ECF p. 14](#)). Specifically, CHIC asserts that its former counsel dismissed its 2008 civil action against the Defendants without disclosure and then actively concealed this fact from CHIC. *Id*. The Seventh Circuit has expressly rejected attempts by a party to invoke its own attorney's misconduct and/or negligence as a basis for equitable tolling, finding that attorney conduct is attributable to the client. *See Powell v. Davis*, 415 F.3d 722, 727 (7th Cir. 2005) (rejecting equitable tolling and noting that "'attorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client'") (quoting *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003)); *United States v. 7108 W. Grand Ave.*, 15 F.3d 632, 633-34 (7th Cir. 1994) ("errors and misconduct of an agent [plaintiff's prior attorney] redound to the detriment of the principal . . . rather than of the adversary in litigation" and "may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary.")). The Accordingly, CHIC may not assert its prior attorney's misconduct as a basis for tolling the statute of limitations.

The Court finds that the three year statute of limitations of the Copyright Act is applicable to CHIC's infringement claim, and the claim accrued in March 2006 when the Agreement was executed. Therefore, the statute of limitations bars CHIC's infringement claim against Defendants, and the Supplemental Motion to Dismiss is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that CHIC's attempt to assert the invalidity of the Agreement on the basis of fraud or economic duress is barred by California's four-year statute of limitations, and CHIC's copyright infringement claim is barred by the three-year statute of limitations of the Copyright Act. Therefore, the Motion to Dismiss (Filing No. 23) and the Supplemental Motion to Dismiss (Filing No. 45) are **GRANTED**. CHIC's Complaint is **DISMISSED with prejudice**.

    **SO ORDERED.**

Date: 9/18/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Erica C. Lai
COVINGTON & BURLING, LLP
elai@cov.com

Jason C. Raofield
COVINGTON & BURLING, LLP
jraofield@cov.com

John W. Nields, Jr.
COVINGTON & BURLING, LLP
jnields@cov.com

Michelle Kaiser Bray
FAEGRE BAKER DANIELS LLP - Indianapolis
michelle.bray@faegrebd.com

Ryan Michael Hurley
FAEGRE BAKER DANIELS LLP - Indianapolis
ryan.hurley@faegrebd.com

James Dimos
FROST BROWN TODD LLC
jdimos@fbtlaw.com

Robert Pitard Wynne
HARDIN & ASSOCIATES, LLP
bwynne@rustyhardin.com

Ryan Kees Higgins
RUSTY HARDIN & ASSOCIATES, LLP
rhiggins@rustyhardin.com

Russell Hardin, Jr.
RUSTY HARDIN & ASSOCIATES, LLP
rhardin@rustyhardin.com